```
___ FILED        ___ LODGED
___ RECEIVED     ___ COPY

    OCT 1 2 2021

CLERK U S DISTRICT COURT
   DISTRICT OF ARIZONA
BY_____ DEPUTY
```

**GLENN B. McCORMICK**
Acting United States Attorney
District of Arizona

**MONICA B. KLAPPER**
Assistant United States Attorney
Arizona State Bar No. 013755
Monica.Klapper@usdoj.gov

**GARY M. RESTAINO**
Assistant United States Attorney
Arizona State Bar No. 017450
Gary.Restaino@usdoj.gov

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    vs.<br><br>David Michael Rees,<br><br>        Defendant. | No. CR 21-000266-003-PHX-GMS<br><br>**PLEA AGREEMENT** |

The United States and Defendant David Michael Rees agree to dispose of this matter on the following terms and conditions:

**1.   PLEA**

Defendant will plead guilty to count 1 of the indictment, charging Defendant with conspiracy, a class D felony in violation of 18 U.S.C. § 371.

**2.   MAXIMUM PENALTIES**

    a.   The crime of conspiracy under 18 U.S.C. § 371 is punishable by 5 years in prison, a fine of either $250,000 or twice the gross pecuniary gain or loss, and a term of supervised release of 3 years. The maximum term of probation is 5 years.

    b.   According to the Sentencing Guidelines issued pursuant to the Sentencing

1  Reform Act of 1984, the Court shall order Defendant to:

2          (1)     make restitution to any victim of the offense pursuant to 18 U.S.C.

3  § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate.

4          (2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a

5  fine is not appropriate;

6          (3)     serve a term of supervised release when required by statute or when a

7  sentence of imprisonment of more than 1 year is imposed (with the understanding that the

8  Court may impose a term of supervised release in all other cases); and

9          (4)     pay upon conviction a $100 special assessment for each count to

10  which Defendant pleads guilty pursuant to 18 U.S.C. § 3013.

11     c.     The Court is required to consider the Sentencing Guidelines in determining

12  Defendant's sentence.  However, the Sentencing Guidelines are advisory, and the Court is

13  free to exercise its discretion to impose any reasonable sentence up to the maximum set by

14  statute for the crimes of conviction, unless there are stipulations to the contrary that the

15  Court accepts.

16  **3.     COOPERATION REQUIRED**

17     a.     If requested by the United States, Defendant shall meet with representatives

18  of the United States at any reasonable time and place and, in such meetings, shall: (i) waive

19  the Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked

20  about any topic whatsoever; and (iii) provide full and complete information about the topics

21  discussed in each interview, if necessary by volunteering information about which no

22  questions are asked.

23     b.     If requested by the United States, Defendant shall deliver to the United States

24  any documents and other items to which Defendant has access.

25     c.     If requested by the United States, Defendant shall testify at any time and

26  place and, when testifying, shall not invoke the Fifth Amendment privilege against self-

27  incrimination.

28     d.     All information, evidence, and testimony provided by Defendant pursuant to

-2-



this Addendum shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. Defendant shall not attempt to either protect or falsely implicate any person or entity through false information or omission.

e.     The United States Attorney's Office for the District of Arizona shall not use directly against Defendant in any criminal proceeding (other than a criminal forfeiture proceeding) any evidence provided by Defendant pursuant to this provision. Additionally, pursuant to section 1B1.8 of the Sentencing Guidelines, the Court shall not use such evidence in determining Defendant's advisory Sentencing Guidelines range. However, the United States may (i) make derivative use of evidence provided by Defendant pursuant to this Addendum, and (ii) use such evidence directly against Defendant in any criminal forfeiture proceeding and any administrative or civil proceeding.

f.     Defendant shall work undercover only under the direct supervision of law enforcement officers and with the prior approval of the Court.

g.     Defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

h.     Defendant shall not violate any local, state, federal or foreign laws. Additional Agreements Regarding Sentencing

i.     At the request of the United States, Defendant shall request sentencing be deferred for a reasonable period. After such period, if the United States wishes for Defendant's cooperation to continue, Defendant shall not oppose any motions to continue Defendant's sentencing.

j.     Prior to Defendant's sentencing, the United States shall in good faith consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose a sentence below the level established by law as the minimum sentence, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e).

k.     At sentencing and any other appropriate time, the United States shall bring the nature and extent of Defendant's cooperation to the attention of the Court and/or the

- 3 -

1  Federal Bureau of Prisons.

2      l.      If Defendant fails to comply with any of Defendant's obligations or promises

3  to set forth in the Plea Agreement or this Addendum, the United States may:

4          (1)      in its sole and absolute discretion, declare any provision of the Plea

5  Agreement and this Addendum null and void, without giving the defendant any right or

6  option to withdraw from the Plea Agreement, this Addendum, or the plea of guilty;

7          (2)      recommend any sentence, up to and including the statutory maximum

8  sentence;

9          (3)      prosecute Defendant, or reinstitute prosecution of Defendant, for any

10  and all crimes committed by Defendant, notwithstanding the Statute of Limitations, the

11  Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

12          (4)      use in any manner, and in any proceeding, any evidence provided by

13  Defendant before or after execution of this Addendum; and

14          (5)      advise the Bureau of Prisons that Defendant is no longer a cooperating

15  witness, and recommend re-designation of Defendant to a higher custodial level.

16      m.      If there is a dispute regarding the obligations of the parties under this

17  agreement, the United States District Court shall determine whether the United States or

18  Defendant has failed to comply with this agreement, including whether Defendant has been

19  truthful.

20  **4.      AGREEMENTS REGARDING SENTENCING**

21      a.      Stipulations.   The parties have no agreements as to the sentence to be

22  imposed by the United States District Court.

23      b.      Restitution.   Pursuant to 18 U.S.C. § 3663 and/or 3663A, Defendant

24  specifically agrees to pay full restitution, regardless of the resulting loss amount, but in no

25  event more than $1 million, to all victims directly or proximately harmed by Defendant's

26  "relevant conduct," including conduct pertaining to any dismissed counts or uncharged

27  conduct, as defined by U.S.S.G. § 1B1.3. Defendant understands that such restitution will

28  be included in the Court's Order of Judgment and that an unanticipated restitution amount

- 4 -

1  will not serve as grounds to withdraw Defendant's guilty plea or to withdraw from this plea
2  agreement.

3       c.    Assets and Financial Responsibility. Defendant shall make a full accounting
4  of all assets in which Defendant has any legal or equitable interest. Defendant shall not
5  (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such
6  assets or property, without the prior approval of the United States (provided, however, that
7  no prior approval will be required for routine, day-to-day expenditures). Defendant also
8  expressly authorizes the United States Attorney's Office to immediately obtain a credit
9  report as to Defendant in order to evaluate his ability to satisfy any financial obligation
10 imposed by the Court. Defendant also shall make full disclosure of all current and
11 projected assets to the U.S. Probation Office immediately and prior to the termination of
12 his supervised release or probation, such disclosures to be shared with the U.S. Attorney's
13 Office, including the Financial Litigation Unit, for any purpose. Finally, Defendant shall
14 participate in the Inmate Financial Responsibility Program to fulfill all financial obligations
15 due and owing under this agreement and the law.

16      d.    Acceptance of Responsibility. If Defendant makes full and complete
17 disclosure to the U.S. Probation Office of the circumstances surrounding his commission
18 of the offense, and if he demonstrates an acceptance of responsibility for this offense up to
19 and including the time of sentencing, the United States will recommend a two-level
20 reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. §
21 3E1.1(a). If Defendant has an offense level of 16 or more, the United States will move the
22 Court for an additional one-level reduction in the applicable Sentencing Guidelines offense
23 level pursuant to U.S.S.G. § 3E1.1(b). Defendant understands that recommendations are
24 not binding on the Court. Defendant further understands that he will not be permitted to
25 withdraw the guilty plea if the Court does not follow a recommendation.

26 **5.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

27      The United States agrees that it will dismiss the remaining charges in the indictment.
28 This agreement does not in any manner restrict the actions of the United States in any other

district or bind any other United States Attorney's Office.

**6.      COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.      If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give Defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.      If Defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute Defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, Defendant waives any and all objections, motions, and defenses based upon the statute of limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.  Defendant understands that any statements made at the time of his change of plea or sentencing may be used against him in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**7.      WAIVER OF DEFENSES AND APPEAL RIGHTS**

Defendant waives: (1) any and all motions, defenses, probable cause determinations, and objections that he could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against Defendant, or any aspect of Defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c).  This waiver shall result in the dismissal of any appeal, collateral attack, or other motion Defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.  This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is

1    defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

2    **8.    DISCLOSURE OF INFORMATION**

3            a.      The United States retains the unrestricted right to provide information and
4    make any and all statements it deems appropriate to the U.S. Probation Office and to the
5    Court in connection with the case.

6            b.      Any information, statements, documents, and evidence that Defendant
7    provides to the United States pursuant to this agreement may be used against him at any
8    time.

9            c.      Defendant shall cooperate fully with the U.S. Probation Office.   Such
10   cooperation shall include providing complete and truthful responses to questions posed by
11   the U.S. Probation Office including, but not limited to, questions relating to criminal
12   convictions, history of drug abuse, and mental illness, and financial information – including
13   present financial assets or liabilities that relate to the ability of Defendant to pay a fine or
14   restitution.

15   **9.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

16           Nothing in this agreement shall be construed to protect Defendant from
17   administrative or civil forfeiture proceedings or prohibit the United States from proceeding
18   with and/or initiating an action for civil forfeiture.   Pursuant to 18 U.S.C. § 3613, all
19   monetary penalties, including restitution imposed by the Court, shall be due immediately
20   upon judgment, shall be subject to immediate enforcement by the United States, and shall
21   be submitted to the Treasury Offset Program so that any federal payment or transfer of
22   returned property Defendant receives may be offset and applied to federal debts (which
23   offset will not affect the periodic payment schedule).   If the Court imposes a schedule of
24   payments, that schedule shall be merely a schedule of minimum payments and shall not be
25   a limitation on the methods available to the United States to enforce the judgment.

26   **10.   ELEMENTS**

27                              **Conspiracy, 18 U.S.C. § 371**

28           Between about January 1, 2017 and December 17, 2020, in the District of Arizona

and elsewhere:

    1.    There was an agreement between two or more persons to commit the crimes of securities fraud, wire fraud, money laundering, or aggravated identity theft;

    2.    Defendant became a member of the conspiracy knowing of at least one of its objects an intending to help accomplish it; and

    3.    One of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy.

### Securities Fraud, 15 U.S.C. § 78j(b) & 17 C.F.R. § 240-10b-5

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

    1.    Defendant or a coconspirator acted in connection with the purchase or sale of a security;

    2.    Defendant or a coconspirator knowingly and willfully employed a scheme or artifice to defraud, made untrue material statements or omitted a statement of material fact, and engaged in a practice that operated as a fraud;

    3.    Defendant or a coconspirator acted with the intent to defraud; and

    4.    Defendant or a coconspirator used, or caused to be used, a means or instrumentality of interstate commerce or the mail.

### Wire Fraud, 18 U.S.C. § 1343

Between about January 1, 2017 and December 17, 2020, in the District of Arizona and elsewhere:

    1.    Defendant or a coconspirator knowingly executed or attempted to execute a scheme or plan to defraud or for obtaining money or property by means of fraudulent pretenses, representations, promises, or omissions;

    2.    The statements made or facts omitted were material; that is, they had a natural tendency to influence or were capable of influencing, a person to part with money or property;

    3.    Defendant or a coconspirator acted with the intent to defraud; that is, the

- 8 -

1  intent to deceive or cheat; and

2      4.      Defendant or a coconspirator used, or caused to be used, the wires to carry

3  out or attempt to further the scheme.

**Transactional Money Laundering, 18 U.S.C. § 1957**

5      Between about January 1, 2017 and December 17, 2020, in the District of Arizona

6  and elsewhere:

7      1.      Defendant or a coconspirator knowingly engaged or attempted to engage in

8  a monetary transaction;

9      2.      Defendant or a coconspirator knew the transaction involved criminally

10 derived property;

11     3.      The property had a value greater than $10,000;

12     4.      The property was in fact derived from wire fraud; and

13     5.      The transaction occurred in the United States.

**Concealment Money Laundering, 18 U.S.C. § 1956**

15     Between about January 1, 2017 and December 17, 2020, in the District of Arizona

16 and elsewhere:

17     1.      Defendant or a coconspirator conducted or intended to conduct a financial

18 transaction involving property that represented the proceeds of wire fraud;

19     2.      Defendant or a coconspirator knew the property represented the proceeds of

20 wire fraud;

21     3.      Defendant or a coconspirator knew that the transaction was designed in

22 whole or in part to conceal or disguise the nature, location, source, ownership or control of

23 the proceeds of wire fraud; and

24     4.      Defendant or a coconspirator did something that was a substantial step

25 toward committing the crime and that strongly corroborated the intent to commit the crime.

**Aggravated Identity Theft, 18 U.S.C. § 1028A**

27     Between about January 1, 2017 and December 17, 2020, in the District of Arizona

28 and elsewhere:

- 9 -

1.     Defendant or a coconspirator knowingly transferred, possessed, or used, without legal authority, a means of identification of another person;

2.     Defendant or a coconspirator knew that the means of identification belonged to a real person; and

3.     Defendant or a coconspirator did so during and in relation to the commission of wire fraud.

**11.    FACTUAL BASIS**

Defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

I am an attorney with the firm Vincent & Rees, and I have experience in securities law and business consulting.  I met Ira Gaines through Eric Miller in about 2015.  In about 2016, I started obtaining hard-money loans from Gaines, to fund my own business ventures.  Over about four years, I obtained approximately $3 million from Gaines in hard-money loans.  I typically used my shares in certain microcap stock—i.e., ADAC, WTKN, GMEV, and ADMQ—as collateral.  Throughout the course of my interactions with Gaines, I never acted as his attorney:  I never provided Gaines legal advice, authored attorney opinion letters for him, had a retainer agreement with him, or billed or received payment from him for legal services.

I was aware that Gaines used various illegal practices to increase his stock holdings and proceeds, and I assisted Gaines with some of those practices.  For example, I knew that Gaines routinely used "straw" owners or nominees to open accounts, hold shares of stock, and incorporate entities.  This was part of an effort to conceal Gaines's identity as the true owner of various entities, bank accounts, shares of stock, and other financial instruments.  Specifically, I was aware that Gaines used nominees like Big Thunder to buy, sell, and convert stock while concealing his true identity.  Gaines instructed me to facilitate the sale of stocks using nominees like Big Thunder.  I also know that Gaines used his wife's name

("C.H.") or the name of her son to open stock trading accounts and to direct transfer of stock certificates. Whenever Gaines used a nominee, he continued to exercise control over the asset.

Gaines used nominees in part to avoid being deemed an "affiliate" of an issuer. An affiliate is any person who directly or indirectly controls a company, owns at least ten percent of a company's stock, or serves as an officer or director of the company. Affiliates are subject to limitations when it comes to converting restricted stock to unrestricted stock, but Gaines wanted much of his stock to be unrestricted so that he could sell it in the public market quickly. To that end, he was careful not to exceed ten percent ownership of any company and never wanted to be a director or officer. But stockholders may also be deemed affiliates if they exert sufficient control and influence over a company, which was often true of Gaines because he exerted great influence over these entities. Therefore, by evading classification as an affiliate based on percentage of ownership, Gaines was able to convert stock and sell it in the public market, though in reality he was an affiliate by virtue of his control.

I participated in establishing nominees for Gaines, including two international nominees for transactions that Gaines did not want to perform under his name in the United States. The nominees, "P.P." and "M.N.," were compensated by retaining a portion of the profit Gaines made from the various nominee stock transactions. In February 2019, Vincent & Rees received proceeds of $50,000 that were allegedly from the sale of LVVV stock—transactions for which Gaines used nominees. I arranged for those proceeds to be forwarded from the firm's IOLTA account to Gaines' bank account.[1]

Among the companies where Gaines looked to wield undue influence through fraudulent activity were WTKN and ADMQ. In particular, Gaines told me on several

---

[1] In 2018 and 2019, I assisted in diverting $100,000 that was provided by Gaines for international nominee transactions. Instead of being used in that manner, the funds were divided among me, my assistant, and others.

1   occasions that "we" control all of WTKN.  Gaines was in frequent communication with
2   the officers and directors of these companies.  He would try to convince officers, directors,
3   CEOs, or others who controlled these companies to promote their stock so that there would
4   be more liquidity in the stock.  Because he had access to nearly unlimited shares, Gaines
5   was primarily concerned with a stock's liquidity.  For example, Gaines paid for a marketing
6   campaign on ADMQ to sell his shares, but his main concern was the volume so that more
7   shares could be rapidly sold.  One method that Gaines pressured these companies to use to
8   increase liquidity was promotion of their stock through press releases.  Another was
9   through the publication of attorney opinion letters, authored by "Attorney 1."  At Gaines'
10  direction, the promotional materials were often misleading.
11
12          This promotion process typically began with Eric Miller contacting me to say that
13  Gaines wanted to run a promotion because he was sitting on a significant share of a
14  company's stock.  I would ask Miller what kind of budget they had in mind, which was
15  often around $25,000.  Upon receipt of a wire for the full amount, I would send a designated
16  portion to Miller and keep a portion for myself or to split with J.C.  I would use the
17  remaining majority of the money to pay a promoter who would put together a press release
18  or other promotional material.  I knew that some of these materials were misleading.  I am
19  also aware of several misleading promotional campaigns involving ADMQ that occurred
20  after my involvement ended, in 2020.

21          Gaines also exerted control over entities through his strategy of owning a large
22  percentage of the "float" of a stock.  For example, Gaines might control nearly all five
23  percent of the free-trading stock of a company.  On paper, it appeared that he controlled a
24  small percentage of shares, when in reality he controlled nearly all the stock on the market.
25  Another method that Gaines used was to obtain a shareholder list for a penny stock
26  company in which he had invested.  He would then utilize that list to market other
27  companies to the shareholders, and often pressured me and others to obtain new lists that
28  he could use for this purpose.

During the time that I was associated with him, Gaines was sometimes denied access to banks, brokerage firms, and clearing houses for several reasons, including that he failed to provide tax returns when requested and had a judgment issued against him by the Securities and Exchange Commission. Further, I believe that the brokerage firms became concerned because Gaines would call and belittle or harass them to get his stock cleared quickly. Gaines would make these calls on his own behalf, and then call afterwards on behalf of one of his nominees, like Big Thunder.

Defendant shall swear under oath to the accuracy of this statement and, if Defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in his testimony may subject him to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

### APPROVAL AND ACCEPTANCE OF DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than

- 13 -

the promises contained in this agreement.  I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time.  I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement.  I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

September 1, 2021
Date

David Michael Rees
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised Defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional

- 14 -

1    and other rights of an accused, the factual basis for and the nature of the offense to which

2    the guilty plea will be entered, possible defenses, and the consequences of the guilty plea

3    including the maximum statutory sentence possible.  I have further discussed the concept

4    of the advisory Sentencing Guidelines with Defendant.   No assurances, promises, or

5    representations have been given to me or to Defendant by the United States or any of its

6    representatives that are not contained in this written agreement.  I concur in the entry of

7    the plea as indicated above and that the terms and conditions set forth in this agreement are

8    in the best interests of my client.  I agree to make a bona fide effort to ensure that the guilty

9    plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

10

   September 2, 2021

11   Date

   Dennis K. Burke

12   Mark S. Kokanovich
   Attorneys for Defendant

13

14   **APPROVAL OF THE UNITED STATES**

15            I have reviewed this matter and the plea agreement.  I agree on behalf of the United

16   States that the terms and conditions set forth herein are appropriate and are in the best

   interests of justice.

17

18            GLENN B. MCCORMICK
            Acting United States Attorney

19            District of Arizona

20   September 3, 2021

   MONICA KLAPPER  Digitally signed by MONICA KLAPPER
                Date: 2021.09.03 11:04:04 -07'00'

21   Date

   MONICA B. KLAPPER
   GARY M. RESTAINO

22   Assistant U.S. Attorneys

23   **ACCEPTANCE BY THE COURT**

24

25

26   Date

   Honorable Murray G. Snow
   United States District Judge

27

28

- 15 -